UNITED STATES of America, Plaintiff,

v.

George L. EYLER, Defendant.

No. 90–1271–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 13, 1991.

---

John Patrick, U.S. Attys. Office, M.D. Fla., Tampa, Fla., Deborah S. Smolover, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Robert Merkle, Tampa, Fla., for defendant.

## ORDER DENYING MOTION TO VACATE JUDGMENT OR STAY EXECUTION

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant GEORGE L. EYLER's motion to vacate or stay the execution of the Court's prior judgment on the most recent consent decree between Defendant and Plaintiff United States of America, acting through the Federal Trade Commission ("the FTC"). Defendant's motion for stay of execution until the Bankruptcy Court ruled on cross-motions for summary judgment has been mooted by the Bankruptcy Court's subsequent ruling in *United States of America v. United Schools, Inc.*, Case No. 89–8194–8B1, Adv. No. 90–407 (February 20, 1991). Therefore, the body of this opinion will only address Defendant's motion to vacate pursuant to Rule 60(b)(5), Fed.R.Civ.Proc. 60(b)(5).

## FACTS AND PROCEDURAL BACKGROUND

This case is factually convoluted, involving multiple corporate shells and various federal agencies. A brief review of the characters will clarify the following chronology. Defendant was formerly a major stockholder and/or officer in various Indiana "professional training schools." After an encounter with the Federal Trade Commission, Defendant moved to Florida where he is currently a major stockholder and/or officer of a number of corporations engaged in the business of running "professional training schools." These schools teach consumers various skills, including truck driving. One of Defendant's businesses is United Schools, Inc., a company now in Chapter 11 bankruptcy proceedings. United Schools is the parent corporation of a wholly-owned subsidiary known and doing business as United Truck Masters.

The record submitted by the parties establishes the following chronology, which is relevant to the Court's consideration of Defendant's motion to vacate:

May 12, 1972   The FTC enters into a cease and desist consent decree with Defendant, regarding certain unfair trade practices committed in Indiana by various corporations controlled by Defendant. Defendant is individually named as an officer and/or stockholder in the corporations. *See* Exhibit A–1 to Plaintiff's Complaint.

August 18, 1972   The FTC enters a complaint, decision and order forever restraining Defendant's corporations from certain practices named in the agreement and providing certain ongoing specific prohibitions on Defendant EYLER's activities. See *In the Matter of United Trade Systems, Inc.*, 81 F.T.C. 267 (1972). Defendant is individually named in the order. *See* Exhibit A–2 to Plaintiff's Complaint.

October 16, 1973   The FTC modifies the 1972 order in a manner not relevant to this proceeding. *See In the Matter of United Trade Systems, Inc.*, 83 F.T.C. 837 (1973).

1984, 1988   The FTC commences an investigation of Defendant, now living in Florida, for possible violations of the modified 1972 consent decree.

January 25, 1988 Defendant's first counsel in the 1972 cease and desist action writes to Defendant's second counsel that he would have advised against Defendant's agreeing to the 1972 consent decree, if he [first counsel] had understood the scope of the prohibition. *See* Appendix 4 to Defendant's Memorandum in Support of Motion to Vacate Judgment.

January 5, 1989   The FTC writes Defendant's second counsel, proposing a consent decree on alleged subsequent violations of the modified 1972 cease and desist order. The letter specifies that Defendant is the proposed defendant in the consent decree, and the proposed decree will require the payment of a

$100,000 civil penalty. The letter goes on to state that Defendant will establish a $25,000 escrow fund for restitution of consumers. No other potential defendants are mentioned, and mention of United Schools, Inc. or United Truck Masters is conspicuously absent. An unsigned copy of the proposed consent decree is enclosed with the letter. *See* Appendix 2 to Defendant's Memorandum in Support of Motion to Vacate Judgment.

February 3, 1989 Defendant's second counsel notifies United Truck Master, a United Schools subsidiary, of the ongoing settlement negotiations. The notice specifies that United Schools will not be named in the proposed complaint in exchange for a requirement that Defendant make disclosures to any person or persons who acquire any of his interest in United Schools or any other teaching institution. But the proposed consent decree returned to the FTC does not contain this provision. *See* Appendix 4 to Defendant's Memorandum in Support of Motion to Vacate Judgment.

March 21, 1989 Defendant's second counsel returns the proposed consent decree, which is signed by Defendant and his second counsel. No changes are made on the consent decree. The consent decree only names GEORGE L. EYLER as the defendant—no other defendants are named. No mention is made of Defendant's duty to inform purchasers of his interests, as discussed in the February 23, 1989 letter. The letter accompanying the proposed decree states that Defendant's second counsel is aware the proposed settlement will be forwarded to the FTC Associate Director and FTC Assistant Director for Enforcement, then to the Bureau of Consumer Protection Director, then to the Federal Trade Commission. The letter states that "[i]f there are any problems or questions at these levels, please let me [Defendant's second counsel] know at once." *See* Appendix 3 to Defendant's Memo-

randum in Support of Motion to Vacate Judgment.

April 26, 1989 Defendant's second counsel faxes to a vice-president of United Truck Master that an escrow account has been set-up to receive the $125,000 needed to satisfy the proposed FTC consent decree. The fax directs United Truck Master to write a check to the escrow account. The fax goes on to state that once the deposit is made, Defendant's second counsel will notify the FTC that the funds have been deposited. The fax also mentions a "revised proposed consent decree" that apparently refers to the additional clauses discussed in the February 23, 1989 letter, but not included in the returned proposed consent decree. *See* Appendix 5 to Defendant's Memorandum in Support of Motion to Vacate Judgment.

May 1, 1989 Defendant's second counsel notifies the FTC that "there has been deposited ... the sum of $125,-000." No mention is made of the source of the funds. The letter closes by stating that the revised proposed complaint is an integral and essential part of the settlement. *See* Appendix 5 to Defendant's Motion to Vacate Judgment.

October 11, 1989 The Board of Directors of United Schools attempts to authorize the payment of the $125,000 which was previously deposited in the escrow account by the subsidiary, United Truck Masters. *See* Appendix 4 to Defendant's Memorandum in Support of Motion to Vacate Judgment.

November 13, 1989 United Schools seeks protection in bankruptcy and files under Chapter 11 in the Middle District of Florida.

December 15, 1989 The Federal Trade Commission accepts the proposed consent decree.

February 5, 1990 Defendant's second counsel updates the FTC on the status of the escrow funds. Defendant's second counsel recommends that the FTC "wait until the situation clarifies." A motion to authorize a final settlement

with the FTC is filed in the United Schools bankruptcy case. *See* Appendix 6 and Appendix 7 to Defendant's Memorandum in Support of Motion to Vacate Judgment.

June 7, 1990  The Bankruptcy Court denies the motion for authorization of the FTC settlement, holding the monies are not a valid debt of United Schools, and orders the escrow account turned over to the Bankruptcy registry. *See* Appendix 8 to Defendant's Memorandum in Support of Motion to Vacate Judgment.

October 10, 1990  The FTC files a complaint for civil penalties and injunctive relief against Defendant, individually, for violations of the modified 1972 restraining order.  GEORGE L. EYLER is the only named defendant, and is named individually.  Concurrently, the FTC files a consent decree which states that Defendant shall pay certain civil penalties and shall escrow monies to reimburse various consumers for damages suffered from Defendant's actions.  The consent decree is the one finalized by the FTC on December 15, 1989.

October 16, 1990  Judgment on the consent decree is entered by this Court.

November 9, 1990  Defendant, now represented by third counsel, files a motion to vacate the October 16, 1990 judgment on the consent decree and a supporting memorandum.

November 15, 1990  Defendant files an amended motion to vacate the October 16, 1990 judgment on the consent decree.  Alternatively, Defendant moves to stay execution until the Bankruptcy Court rules on cross-summary judgments in the United Schools case.

February 20, 1991  Defendant's motion for stay of execution until the Bankruptcy Court ruled on cross-motions for summary judgment is mooted by the Bankruptcy Court's subsequent ruling in *United States of America v. United Schools, Inc.,* Case No. 89–8194–8B1, Adv. No. 90–407 (February 20, 1991).

June 13, 1991  Defendant files a suggestion of pendency in bankruptcy, and seeks a stay of the proceedings in *United States of America v. Eyler,* this case.

August 5, 1991  This Court finds that this case is exempt from the automatic stay in bankruptcy.

### DISCUSSION

Defendant's motion to vacate judgment is premised on Federal Rule of Civil Procedure 60(b)(5), Fed.R.Civ.Proc. 60(b)(5). The rule states in relevant part:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.**  On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons:

. . .;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment shall have prospective application; . . .

The first consideration for this Court is that, in general, Rule 60(b) motions are analyzed under the strict standard set forth in *Tessmer v. Walker,* 833 F.2d 925 (11th Cir.1987), which requires that the court grant Rule 60(b) motions only in exceptional circumstances.  These exceptional circumstances were further delineated in *United States v. City of Fort Smith,* 760 F.2d 231, 233 (8th Cir.1985), as requiring the party seeking to modify or vacate the order to show "that new and unforeseen conditions have produced such extreme and unexpected hardship that the decree is oppressive."  Nothing in the record before this Court presents the kind of exceptional circumstances contemplated by the drafters of Rule 60(b) or the *City of Fort Smith* ruling.  Defendant could reasonably foresee that, as the sole named defendant in the consent decree, he might be responsible for the penalties imposed on him.  The fact that Defendant's corporate pocketbook

closed in bankruptcy before the payment to the FTC could be finalized was similarly foreseeable to the Defendant, who was an officer and major stockholder in the bankrupt corporation.

■ The second consideration for this Court is the order's lack of prospective effect. *Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir.1980) held that rule 60(b)(5) can be applied only to judgments that are prospective in effect. This rule of law was more recently applied in the case of *Gibbs v. Maxwell House, a Division of General Foods*, 738 F.2d 1153 (11th Cir. 1984). The *Gibbs* court established that, within the Eleventh Circuit, the relief contemplated by a Rule 60(b)(5) motion is relief from orders with prospective application, and that judgments awarding current monetary damages for past wrongdoings are properly considered retroactive, not prospective in nature.

■ The third consideration for this Court is the contractual nature of the consent decree and order. The parties agree that the consent decree can be treated as a kind of contract between the parties. *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975), *Eaton v. Courtaulds of North America, Inc.*, 578 F.2d 87 (5th Cir.1978). Thus, contractual principles, including the parol evidence rule and the equitable estoppel doctrine should be applicable to the decree.

The United States Supreme Court in *United States v. Armour & Co.*, 402 U.S. 673, 681–2, 91 S.Ct. 1752, 1757–8, 29 L.Ed.2d 256 (1971), held that a consent decree must be construed from the four corners of the document, and that reference to outside sources was improper. Plaintiff correctly points out that the consent decree in question here names only GEORGE L. EYLER as Defendant. Furthermore, the order on the consent decree clearly and unambiguously dictates that "Defendant shall ... pay to plaintiff, ..., a civil penalty of One Hundred Thousand (100,000) Dollars." ¶ 2, Consent Decree in 90–1271–CIV–T–17A. In the next paragraph, the order states that "Defendant

shall ... pay a sum of $25,000 into an account held in escrow by defendant's counsel...." GEORGE L. EYLER is the only named defendant in the order. As such, he would be the only person chargeable under the document, if it was a contract.

Even if this Court were to assume that the failure to name any of Defendant's corporations was due to some verbal agreement not within the writings, that still leaves Defendant, who signed in his individual capacity, analogous to a co-party or surety on the contract. *See e.g.*, Fla.Stat. §§ 673.401–673.403 regarding signatures on negotiable instruments, and Fla.Stat. §§ 673.413–673.415 regarding liability of accommodating parties. Therefore, just as either one of two co-signatories to a contract may be required to fulfill the contractual obligations of both, in this analogous situation, Defendant is required to fulfill the obligation set forth in this contract with the FTC.

■ The fourth and final consideration this Court must make is perhaps the essence of Rule 60(b)(5)—what do the equities of the situation require? The Court's observations on the equities of this case lead to the conclusion that no inequity is being done to Defendant by making him responsible both for his conduct and for his subsequent choices in dealing with the FTC.

Defendant makes a number of broad allegations in the body of his motion, including veiled allegations of fraud or misrepresentation by the FTC, gross neglect, and denial of due process. The legal allegations are unsupported by case law, and the factual allegations are similarly unsupported by the totality of the facts contained within either the four corners of the consent decree or any supporting memorandum.

Defendant alleges that one of the crucial facets of the agreement between himself and the FTC was that the consent decree and order be filed "at once." This statement was not made during the course of negotiations. The statement was made in the March 21, 1989 letter to the FTC ac-

companying the consent decree which only named GEORGE L. EYLER as Defendant and which was signed only by Defendant and his counsel. Furthermore, the full paragraph reads as follows:

I understand that you will now forward this matter via Messrs. Dingfelder and Sanger [the FTC Assistant Director of Enforcement and the FTC Associate Director of Enforcement] the Bureau Director and thence to the Commission. *If there are any problems or questions at any of these levels, please let me know at once.* [Emphasis added.]

Appendix 3 of Defendant's Memorandum in Support of Motion to Vacate Judgment.

This paragraph is important for two reasons. First, the paragraph indicates that Defendant was aware the consent decree had to be forwarded to other authorities for review before the order would be enforced. Surely Defendant, who had been a party to a similar consent decree in 1972 was aware that this procedure does not occur "at once." Secondly, the phrase "at once," when read in context, indicates only that Defendant was to be notified only if any problems or difficulties arose in the review procedure prior to the Commission's vote on the decree. There are no facts in the record which establish that any problems or difficulties arose during this review process.

Furthermore, the documents filed by the Defendant reflect that long periods of time between actions was not uncommon in this case. The Defendant took two months to return the proposed consent decree. *See* Appendix 1 and Appendix 3 to Defendant's Memorandum in Support of Motion to Vacate Judgment. Another month passed before Defendant's counsel contacted a United School's subsidiary to arrange the payment for Defendant. *See* Appendix 5 to Defendant's Memorandum in Support of Motion to Vacate Judgment. Seven more months passed before the Board of Directors got around to authorizing the subsidiary's payment. *See* Appendix 4 to Defendant's Memorandum in Support of Motion to Vacate Judgment. Defendant's own counsel admitted to the FTC that apparently eight months had gone by without a word from Defendant to Defendant's own attorney about the status of this allegedly crucial and time sensitive agreement. *See* Appendix 6 to Defendant's Memorandum in Support of Motion to Vacate Judgment.

Finally, even if this Court was inclined to consider the time lags in this case extreme, the fact remains that Defendant's conduct was as egregious, if not more egregious, than the conduct of the FTC officials. As an officer and major stockholder in United Schools, Defendant did not mention to the FTC or the Court that the funds which were to pay his personal liability were being provided by his corporation. This information would not have come to the Court's attention until Defendant's counsel informed the FTC that problems had arisen in the distribution of the escrow fund. Similarly, Defendant did not mention to the FTC or the Court that the corporation providing these funds, his own corporation, was in bankruptcy until a month after the fact. If this fact was unknown to the FTC officials, Defendant's tactics could be considered a species of fraud. If both parties were aware of the source of the payments, the agreement perpetrated a sham transaction upon this Court, which believed it was imposing liability against the named defendant in the case and not unnamed parties.

Although this Court recognizes that Defendant will continue to protest his innocence to the end of his days, the fact remains that Defendant signed his name to a consent decree admitting financial responsibility for violations of the modified 1972 consent decree. The second consent decree and the order on that second consent decree imposed a $100,000.00 civil penalty and a $25,000.00 restitutionary requirement against GEORGE L. EYLER, the sole named defendant. No mention was made of United Schools, United Truck Masters or any other corporation. There is no evidence that would support a finding of fraud in the inducement, fraud in the execution, duress, mutual mistake or any other type of inequity which would require vacating the order on the consent decree.

ORDERED that Defendant's motion to stay execution of the judgment on the consent decree is MOOT. It is further ORDERED that defendant's motion to vacate the judgment of the court on the consent decree is DENIED.

DONE and ORDERED.